Thank you. You may be seated. Our next case is case number 4-16-0148, the people of the state of Illinois v. James Ellis. For the appellant, we have Mr. Londrigan, and for the appellee, Ms. Kimmel. You may proceed, counsel. Good afternoon, your honors. May it please the court, counsel. The issue before the court this afternoon, your honors, is one of probable cause in the issuance of a search warrant. Kind of an interesting case, at least from my standpoint. We have an officer that investigated a burglary shortly after its occurrence. He was notified that actually the sister of the defendant had information relevant to this burglary. He interviewed that witness, who told him that her brother had come by her residence prior evening, which would be a day or two after the burglary, indicating that he... Was that information set forth in the complaint for the search warrant? Well... That it was a day or two after the burglary? No. When the burglary occurred? You know, it doesn't actually state the day that the burglary occurred. Right. Which it did, but nevertheless. That is factually correct, though, that a day or two after this burglary occurred... But let me stop you, Mr. Londrigan. Sure. Because aren't we looking at the four corners of the warrant to determine whether probable cause existed? Yes. I mean, so we can't consider the fact that the burglary actually occurred a day or two before. It would have been nice if they put that in. But that was not available to the trial court when it was looking at this warrant. It's not in the warrant. That's correct. That was not in the application. Let me ask you one more question. Sure. Is there anything in the warrant application where the sister says, I saw these items, and I was in his home a day or two before this, and those items weren't there? Not in the warrant. Yeah. Okay. So, yes, the warrant could have been perhaps more artfully drafted. Nevertheless, though, the warrant does suggest that even though these items are fairly common, it's a fairly small town, Forest, Illinois, the burglary or these items are found, the defendant's residence, rather, is a very short distance from the location of the burglary, and this defendant is attempting or willing to give a PlayStation 4 item worth several hundred dollars away. So it's more than just the items themselves. It's proximity to the burglary itself. It's the fact that the possessor of the item is willing to give it away. To a family member. To a family member, but nevertheless, there's no suggestion that the family members were getting along all that well. One way or the other. Is that an inference from the fact that the sister is calling? Could be a nice guy. You could go inference either way. I don't know. I guess I don't have any family members who'd give me $400 items. But nevertheless, could be. Could be a very generous man. But I think in a small town of Forest, it's enough to raise suspicion. You say a small town, but I guess I'm just wondering. I wonder how many people had these items that we're talking about. A flat screen TV, you know, video game console. How many people in this small town have those types of things in their home? So I don't know if that's really. I understand the court's concern. And yes, these are items that are somewhat common. But, you know, that's why they're stolen. Is because there's a high demand for them. And things like this are easily sold and given away. However, you know, it's not just the fact that all of these items, that there's large quantities of them out there. I mean, are these items such that all of them are seen together? I mean, there might be a lot of TVs, but there might not be a lot of TVs with PlayStation 4 versus PlayStation 3, 2, or 1. Battlefield 4, once you add. There may be large numbers, but once you add them all together, how many people have them all? And I think there was a suggestion in the, well, I believe that the warrant actually indicated that there was, when the witness went into the home the following day, that there were other PlayStation consoles, games, flat screen TVs. So this is what she observed when she went into the defendant's residence on the 3rd of July. So multiple consoles. Multiple. Okay. Well, it says consoles, plural, games, plural, and a flat screen TV. That's what it says in the application? That's what it says in the warrant. So. You know, there was a decal or a sticker of some kind that was on the console that was described by the victim of the residential murder. It would have been nice, Your Honor. Yeah, but the complaint doesn't say that the sister saw that console with that same sticker on it, right? No, there's nothing in the complaint that would. Do you know who issued the search warrant? Because I wasn't able to read the signature. Was it Phil Heimer? You know, I don't know who issued that, but a judge did, and I think that's really the main argument that I'm here to make today, is that the warrant could have been a little bit more artfully drafted. And, yes, these are somewhat common items, but I think the warrant is sufficient. That's the State's position. The fact that it is so close in proximity to where the burglary transpired, the fact that the guy is willing to give items of significant value away, the fact that the witness sees all of these items together in his residence, well, the time period isn't indicated in there. All, I think, suggest probable cause. Were these items found when the search warrant was executed? I'm sorry? Were the items found in the residence when the search warrant was executed? Yes. They were? Yes. That's my understanding. I'm not sure on that. Well, he was charged with burglary. So I'm not clear that the items that they found were specifically the items that were taken from the residence or items determined to be stolen from somewhere else. That is unknown to the record. But I don't think there's a search warrant inventory in the file. It would probably be in the search warrant file. But maybe there is. I'd have to check the record again. I think the State's primary contention is, though, that under these circumstances this meets the good faith exception to an improper search and the exclusionary rule should not apply. If you look at the seminal case on this, People v. Leon, the court in 1984, the U.S. Supreme Court, creates the good faith exception to the exclusionary rule. And I think the language within that case is very important for this court to take note of. On page 916, 468 U.S. 916, the court states that only after explaining what the exceptions to the application to the rule that they just carved out might be, it states that only in the first exception, and that's where the magistrate is not boundless. If there's something that the magistrate does knowingly, the deterrence of court of the magistrate's finding of probable cause does not preclude inquiry into the knowing or recklessly falsity of the affidavit. That's the first exception. And it's only under those instances in which the court suggests that their new rule should not apply. Well, in Leon, in talking about the exceptions to that rule, doesn't the court specifically indicate that the good faith exception would not apply when an affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable? Yes, and that's exactly what this court would have to find. That this officer's belief in the propriety of this warrant was so unbelievable, so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. And that specific language actually is not present in the Illinois statute codified this particular exception. The statute dealing with good faith doesn't have that kind of language. It simply suggests that in a criminal proceeding, the evidence has to be proven that the evidence was seized by a police officer who acted in good faith. Good faith means, pursuant to a search warrant or an arrest warrant obtained from a neutral and detached judge, which warrant is free from obvious defects other than non-deliberate errors in preparation and contains no material misrepresentation by any agent of the state and the officer reasonably believed that the warrant to be valid. So, you'd have to show that this officer must have understood that there was some impropriety with this warrant. That it was, to use the language in Leon, entirely unreasonable. His belief that this warrant was appropriate has to be deemed entirely unreasonable. The fact that we can even argue about whether or not probable cause was there, the fact that we have an unbiased magistrate that has already issued this warrant, how can this officer have done anything different than what he has done? The exclusionary rule is attempting to punish the investigating officers for having done something negligently or intentionally wrong. That's not even alleged in this instance. So, what is the purpose of trying to exclude the evidence? The rule is not advanced by the application of the exclusion of this evidence. So, the whole purpose for the existence of the exclusionary rule doesn't even exist. And that's what the court was trying to say in Leon. It went over this pretty carefully. Even the lower court, the one that granted the motion to not quash arrest but to suppress evidence, indicated that it did not believe that there was any impropriety on the part of the police. Nor is there any impropriety on the court that issued the warrant in the first instance. She just believed that she'd be the lower court. I'll quote her. Therefore, I'm going to grant the motion to suppress. There was no substantial basis for concluding probable cause, nor would the good faith exception apply because the warrant is so lacking in regards to the facts. It's not up to the police officer to question whether or not the warrant is lacking in facts. That's up to the magistrate. That's up to the judge. And the court in Leon was very clear that the exclusionary rule does not exist to punish the court system. It's not created in order to suggest that magistrates are judges. The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. There is no evidence suggesting that judges or magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. That's the court's language, page 916, 468 U.S. at 916 in Leon. So this officer has done everything that we want an officer to do. Perhaps he could have drafted the warrant a little bit more effectively, but the trial court or the issuing court, the court that issued the warrant, should have brought that to the attention of the officer if the court thought it was lacking. It didn't. It issued the search warrant. The officer, the same officer, then promptly went and executed that warrant. There's simply no reason for application of the exclusionary rule under these circumstances. When would that exception to the exception apply? So in other words, you have a search warrant issued and under Leon, basically if a detached neutral magistrate issues it and the officer serves it in good faith, then the fruits of the search won't be suppressed unless, and then there's those four exceptions. One of the exceptions is this probable cause issue. It seems like that exception to the exception swallows up the exception if you accept their view. Exactly. Couldn't have said it better. I thought so, too. The only reason they could possibly have stuck in exception number three, which is what we're talking about, is I guess they didn't want to propose the possibility that there could be a warrant so ridiculous as to be beyond the pale. I mean, it was just so obviously lacking that it almost implies some type of impropriety in having the warrant granted. I don't know, but I couldn't agree with you more, Judge. The exception is engulfing the exception. The officer is not supposed to second-guess the court. Now on the other hand, a search warrant is supposed to be based on probable cause. And if we read Leon the way you're talking about it, it seems like any time a warrant issues, we're going to give it the good faith exception even if there's no probable cause on the face of the warrant. So that good faith exception almost eats up the rule under the Fourth Amendment. Not if you can show that the officer gave an improper affidavit, that he gave false information in convincing the judge to issue the warrant, or if the judge was guilty of some other type of impropriety, some other illegality in issuing the warrant. But yeah, the whole purpose for the exclusionary rule is to tell that officer, don't do that again. You did something inappropriate. We don't want you to repeat that behavior. What about this officer's behavior would you sanction him for? Well, is it your position that even if there wasn't probable cause, that the good faith exception applies, that this exception, that says that if it's lacking in the issue of probable cause, that that doesn't apply? Absolutely, Judge. That's the state's position, that even in the absence of probable cause, you should not sanction actually the state by suppressing this evidence because that's not the purpose of the exclusionary rule. You're not advancing that rule or the purpose behind it at all. You're not telling this officer that he did something wrong or that he should have done something that he didn't do. Is it implying or putting on the officer some duty to examine probable cause, even though I realize you take it to the judge, the judge signs it or not, is it putting some duty on the officer that you just can't, I mean, when it's clear that there's not probable cause, you just can't go and act on such a warrant? Well, obviously the officer is going to be educated as to what generally is required in order to be successful to get a search warrant. And so I would think that he would have some understanding of what is required to get probable cause. However, it is the whole purpose for the exclusionary rule, almost the only purpose for the exclusionary rule, is to try to keep that officer from getting too aggressive in his desire to obtain evidence by requiring that he get a search warrant first and that he get an approval from a court. So he's supposed to be honest and he's supposed to be following the letter of the law and getting that search warrant, but it's really not up to him to determine whether or not probable cause exists. That's not his function. He's supposed to rely on the court for that. And so if you're going to punish him after he's done everything that he should have done, then you should point out what he needs to do the next time that he didn't do in this instance that required that type of sanction. And so if we were to say that this was lacking in probable cause, given that it did not even state when the burglary occurred or unable to identify these common items, which had some identifiers according to the information we have, isn't it putting an obligation on the officer? You're the one preparing this affidavit. Make sure your affidavit has enough to constitute probable cause. No, Judge, it's not. Because now we're getting into a discussion of what does and what does not constitute probable cause. And that's not the officer's function. That's the court's function. The officer is to put up as much evidence as he possibly can gather to try to make the court as comfortable as he can make that court so that the court will give him what it is he wants, his search warrant, but it's not his opinion that matters. It's the court's. And he's supposed to follow what the magistrate or what the court tells him to do. It's not the second-guessing. If the judge says, okay, you've got enough here, then he's got enough. If the judge says, no, you don't, go out and find more, then he's got to do that. I'm just kind of focused on this language that talks about a warrant based on an affidavit, and the officer is the one who prepares that affidavit. That's correct, Judge. And if that affidavit is insufficient, it's up to the court to tell the officer just that. But when the court tells the officer it is sufficient and signs that warrant, and the officer then appropriately relies upon that judge and his determination that probable cause has been established, then there's no reason for application of the exclusionary rule at that point. Then why have this rule? Because obviously this assumes that an officer has prepared an affidavit, the court has given it, given the officer his or her blessing and signed the application for the warrant, and the warrant has been served. And now this says that the officer, even though going through that process, cannot rely on that when it is so lacking in indicia of probable cause in the affidavit. So this assumes, I would think, this exception, this assumes that the judge has signed off on it, that the officer relied on it, and that it was served. I agree, Judge. And I couldn't, you know, I think that was brought up by Justice Pope, and I think that's a perfectly appropriate question. Why do we have an exception that appears to basically engulf the general rule? I think the only reason that they could put that in there, and they did put it in pretty strong language here, it doesn't just say that if, you know, probable cause hasn't been met. It says so lacking in indicia of probable cause is to render official belief in its existence entirely unreasonable. So it must be extreme, it must really be bad, and I think that they just tried to leave it open because they thought perhaps there could be somewhere, a set of circumstances that justified that. Counsel, I'm sorry, I'm going to have to stop you. You're out of time, but you will have additional time on rebuttal. Thank you. Thank you. Court, Counsel, I'm Amanda Kimmel on behalf of Mr. James Ellis. Your Honors, the reason for the third limit discussed in the Leon Doctrine is exactly this case. This search warrant was so outside the bounds, so lacking in any indication of probable cause, that it was unreasonable. As the trial court appropriately described the flaw in this warrant, it would serve for the search of any house in Livingston County, and that really is the problem here. This search warrant allowed for essentially a fishing expedition. These household items, a television, a video game console, and a video game, are so common that it's equivalent to saying a microwave was stolen from someone's house, and another person reported a microwave in their house in granting a search warrant. Now, did his sister indicate that she saw multiple consoles or just one? Her direct quote from the search warrant is multiple console, multiple PlayStation consoles. However, that is not uncommon. When a new console comes out, games can only be played for that. So as they come out, people tend to accumulate them. There's three in my house. I do not play video games. Can I ask you a question? Sure, certainly. Do you know if, when they executed the search warrant, they found the items they were looking for? I was going to mention that on the initial execution of the search warrant, the items were not found. There was a subsequent search, and the items were later found, I believe, in a garage located on the property. But in the initial search, they were not found. What did Officer McCormick do wrong? He drafted a search warrant that allowed for a fishing expedition. And the Illinois Supreme Court in People v. Turnage specifically discussed that the prophylactic nature of the exclusion rule is served by preventing fishing expeditions. That's what this warrant was. But actually, in the application for the warrant, when he describes the property that he's searching for, it was fairly specific on some of the items, with the sticker and the serial number and that type of thing. But there was nothing in the affidavit that really tied those particular items to what the sisters saw. Absolutely. There was no sufficient nexus linking those items that had been stolen and the sisters' description of the items that were seen at the house. The state tries to point to the proximity to the crime. However, any high-crime neighborhood where items were stolen, we wouldn't allow probable cause just because someone lived close to the crime scene. That does not create a sufficient nexus. There was no evidence anyone put forth of Mr. Ellis being seen entering or exiting the location of the robbery or that he had ever been in that home. And not that it matters, but do you know who the judge was who signed the form? I also could not identify who the judge was based on the signature. They don't mention him in the hearing either. No, no, they don't. It's by name. No, so I also could not identify that. However, these items are also ubiquitous. The most rare item was the Battlefield game, which has sold 7 million copies. In any house where that game is in order to be utilized, you need a PlayStation 4 gaming console and likely a flat-screen TV to play it. This court has written that absent police misconduct, the exclusionary rule doesn't apply. What was the misconduct in this case? I think that that is more narrow of a reading than Leon sets forth. Than what? Than Leon sets forth. My reading of Leon is that there's a good faith exception and then it puts four limits on it. And one of those limits is that probable cause is so lacking that it's unreasonable to believe that there is probable cause. Not unreasonable, entirely unreasonable. Entirely unreasonable, yes. What did the Supreme Court mean by that? I believe the Supreme Court meant exactly the case that we have here. A warrant that is so vague that it could apply to any household. Certainly, officers do have some responsibility to put forth to the court search warrants that link, that create a sufficient nexus. That is a requirement. There is just simply none here. There could have been more information to correct the search warrant and make it proper, but... So if he had added that the description from the sister generally matches the items stolen in the burglary, that would have been enough? For example, the items stolen included an identifiable sticker. Is that a yes? Yes. Excuse me. If the sister had described the easily discernible features of the items stolen, that would make it different than any other house that had a game playing station and television, such as the sticker, or even the remote that was silver in camouflage color. That's, again, an easily identifiable detail describing the items stolen. Most of these controllers are black or white. That could have possibly been enough to create a sufficient nexus to point to some of these details that make it... This court in Bryant, the case both of you folks cite, wrote that a police officer's decision to obtain a search warrant is prima facie evidence that he has acted in good faith and that to rebut this evidence, the defendant must show that the magistrate simply rubber-stamped the warrant application, the officers were dishonest or reckless in preparing the affidavit, or the warrant was so lacking in probable cause that no officer could have relied upon it. So that's your claim here? So lacking in probable cause is undoubtedly entirely unreasonable for the officer to believe, even though it presented this information to the judge under oath, and the judge says good enough and signs it, that it's entirely unreasonable for him to rely upon that? Yes, and I would just point to People v. Turnage that states that if it appears that this is a phishing expedition... I don't know what that means in the context. That doesn't make any sense. What I'm talking about is this particular case. Entirely unreasonable. Why was it entirely unreasonable for the officer to have relied upon, after giving truthful information, there's no challenge to that, under oath to the judge, the judge says good enough and is going to issue a warrant. Why was that entirely unreasonable in this case? Because the warrant was so vague that it would allow for the search of any home. Doesn't it talk about this particular home? Yes. 305 South Williams Street in Forest in Livingston County? Correct. Was there some other home that was authorized to be searched under this warrant? No, but for the address, saying that a home had a television and a game console and a video game. Why does it entirely unreasonable mean, judge, this guy, Nisa Schaffer's brother is a criminal, he's a burglar, and we had a burglar in Livingston County, we think it's in his place. That might be entirely unreasonable because there's no other than his reputation as being a burglar. Correct. Do you think a judge would have issued a warrant on that basis? No. So we have a judge who issues a warrant after receiving truthful information and the police now have to second guess the warrant the judge issued? The purpose of the exclusionary rule, as well as the good faith exception, is to punish or not punish inappropriate activity. And here the warrant that was written was so vague that the exclusionary rule is served by preventing the evidence from coming in. Are you familiar with the facts in volume? Were this court addressed the good faith exception that Judge Fay in Vermillion County said didn't apply and we concluded that he committed blatant error by so concluding? And how is that case distinguishable from this one? I would say that in that case there was more information. There were four different sources that called in to report the criminal activity and report the criminal activity at a specific address. And, you know, the cooking of methamphetamines is obviously illegal activity. There's nothing illegal about having a television, a gaming console, and a video game in your home. So that is a distinguishing factor that what was being reported was not illegal. There was nothing wrong with having those things in your house. There was also nothing wrong with offering for Mr. Ellis to offer to give them to his nieces or nephew. None of those things indicate criminal activity. So the fact that it was relatively, I believe in People v. Roehost they stated that if to the average person something would appear relatively innocuous, that is not enough for probable cause. In that case there was a wiretap going on for drug trafficking and a statement reported that come over here close to my house. A warrant was obtained for searching the house and on review the court said that was not enough for probable cause because come over to my house is relatively innocuous. You can't assume drug activity. Likewise here, having a television, gaming console, and a video game is innocuous activity from which you can't assume criminal activity or probable cause. Ken Bryant, this court, paraphrased what the United States Supreme Court said in the Dreska v. United States some 50 years ago, that a grudging or negative attitude by any court reviewing the issuance of a search warrant towards such warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. Why isn't that applicable here? I'm sorry, could you repeat the crux of the question? A grudging or negative attitude by any court reviewing the issuance of a search warrant towards such warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. Here the search warrant needed additional information and there's nothing to indicate that that couldn't have been obtained. As Justice Pope and Holder White pointed out, it doesn't even contain the date that the crime occurred. This search warrant was just simply so vague and so lacking in any tie between Mr. Ellis' home and the items that were stolen that it simply does not create probable cause. When we're discussing Leon, though, in every case that has Leon applying to it, there's not sufficient probable cause in the warrant. Correct. So the good faith exception has to apply to some of these warrants where there's no probable cause. Yes, absolutely. So to me, this is how I kind of think of it. An officer signs an affidavit, he says there was a burglary, a football was stolen, I saw XYZ playing basketball. He carried that basketball into his house. I want a warrant to search his house. Well, that's so lacking in probable cause because it was a basketball that was stolen. It was a football. So to me, that's a clear thing where the exception number three under Leon would apply. But in our case, you know, there's something there, I think, but I agree. I mean, I'm wrestling with the issue of this swallowing up the exception to the exception. I think that that can be a problem, but here we have a warrant that is equally outside the bounds because of its vagueness. It's not an obvious, I guess, error of changing of goods on the face of the warrant, but these items are so common that it is just simply not enough for probable cause. There's millions and millions of flat screen televisions and playstations. But there are other types of tools that get stolen in a burglary. And, you know, you can't describe a tool with sufficient particularity to make it a unique tool. Yet search warrants are issued for those types of items when there's probable cause to believe that tools might be found in this residence that are linked to the burglary. But again, I believe even under that scenario, it would be required to name brands of tools. You know, this brand of tool was stolen and it was seen, that particular brand of tool. Well, how common is a craftsman tool? You know what I mean? There are millions of craftsman tools out there. So it's kind of the same thing. And I think it was in the McCarty case that we had that issue and we addressed it. And said, you know, the fact that they couldn't particularly describe the tool in a way that made it unique didn't matter. And here there are easily identifiable distinguishing features that would have allowed for creating a link, describing that sticker on the gaming console, describing the hand controller that was unique, was different than the normal controller. This case presents ways that that could have been done properly, where there weren't obvious ways that the warrant could have been properly written. And it just simply wasn't. Therefore, the good faith exception should be looked at with that limit, that third limit that it was entirely unreasonable. And if the trial court did properly review the Leon Doctrine and conclude that the probable cause was so lacking that the evidence should still be excluded. And I would ask that this court do the same. Thank you, counsel. Any rebuttal, Mr. Londrigan? I'll try to be brief. I'm not going to argue whether or not this sufficient probable cause existed. I think we're past that. I'm not going to concede that. I think there was enough. Could there have been more? Of course. The suggestion that there could have been more, I think, is a red herring. That's not the point. The officer is not charged with the obligation of doing every conceivable thing that he could. He's supposed to do his best to present something to the court. It's up to the court to determine whether or not probable cause exists. There's a great quote here in Leon. Basically, the court concludes on page 419. In short, where the officer's conduct is objectively reasonable. And I think this officer's conduct was. Nobody has suggested it's not objectively reasonable. Excluding evidence will not further the ends of the exclusionary rule in any appreciable way. For it is painfully apparent that the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty. This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause. And if so, to issue a warrant comporting in form to the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient. Penalizing the officer for the magistrate's error rather than his own cannot logically contribute to the deterrence of the Fourth Amendment violation. And that's the State's argument in a nutshell. This officer has done nothing wrong. He was objectively reasonable in relying upon a court to determine that probable cause had been established. Ergo, the exception of good faith applies. And we ask this court to overrule the lower court's order to the contrary. Thank you, Judge. We'll take this matter under advisement and may it recess until the next case.